UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAFAR MOHSENZADEH,<br><br>                 Plaintiff,<br><br>v.<br><br>JOHN F. KELLY, Secretary of the Department of Homeland Security, et al.,<br><br>                 Defendants. | Case No.: 3:14-cv-2715-L-RBB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISIMISS** |

Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or alternatively for summary judgment under Rule 56. Plaintiff filed an opposition. Defendants did not reply. The matter is submitted on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, Defendants' motion to dismiss is granted for lack of subject matter jurisdiction. This action is dismissed without prejudice.

**I.    BACKGROUND**

Plaintiff Zafar Mohsenzadeh is an Iranian national who was granted asylum in the United States in or around 1995. On February 25, 2012, he filed an application form I-485 for adjustment of status to permanent residence. (Compl. at 3.) The United States Citizenship and Immigration Services ("CIS") confirmed receipt of the application,

Plaintiff attended the Biometrics and INFOPASS appointments, and made status inquiries. (*Id.* at 3-4 & Ex. 1.) So far, his application has not been adjudicated.

It is undisputed that Plaintiff's application is on hold because he was found inadmissible under 8 U.S.C. § 1182(a)(3)(B) due to his support of a Tier III terrorist organization, *see* 8 U.S.C. § 1182(a)(3)(B)(vi)(III). (Opp'n at 2, 3.) In his asylum application Plaintiff allegedly disclosed that, while still in Iran, he had distributed literature for Mojahedin-e Khalq ("MEK"), a Tier III terrorist organization.[1] (Opp'n at 3.) "Most forms of immigration relief are barred by statute for aliens who have engaged in terrorist activities." *Bojnoordi v. Holder*, 757 F.3d 1075, 1077 n.2 (9th Cir. 2014); *see also* 8 U.S.C. § 1182(a)(3)(B)(iii), (iv)&(vi) (defining "terrorist activity," "engage in terrorist activity" and "terrorist organization," respectively). Section 1182(a)(3)(A) renders such individuals inadmissible, thus precluding granting an application for permanent residence.

However, the Secretary of Homeland Security (hereinafter sometimes "Secretary") has authority and discretion to make exceptions for individuals or Tier III terrorist organizations. 8 U.S.C. § 1182(d)(3)(B) ("discretionary exemption"). Pursuant to this provision, since May 24, 2007, the Department of Homeland Security ("DHS") issued a series of memoranda providing guidance for processing applications which, like Plaintiff's, would be denied but for the possibility of a favorable exercise of the discretionary exemption. (Defs' Exh. at 1-43.)[2] The memoranda direct the CIS to deny

---

[1] Initially, Plaintiff's counsel admitted that Plaintiff distributed literature for MEK. (Opp'n at 3 & n.1; *see also* Defs' Ex. at 44-45.) For information about MEK's background, see *Rajabi v. Attorney General*, 553 Fed. Appx. 251, 253 n.5, 254 (9th Cir. 2014), and *Bojnoordi v. Holder*, 757 F.3d 1075, 1076 n.1 (9th Cir. 2014). Plaintiff's counsel has since qualified his admission by referring to the organization as "a Mojahedin student group in Iran." (Opp'n at 3 & n.1; *see also* Defs' Ex. at 44-45.)

[2] Plaintiff does not object to the Court's consideration of the DHS memoranda, and has not presented any evidence to the contrary. Accordingly, the Court takes judicial

2

3:14-cv-2715-L-RBB

applications where, due to individual circumstances, the applicant would be ineligible for the discretionary exemption even if the related Tier III terrorist organization were exempted. However, cases where the applicant could benefit are put on hold pending exemption. Numerous exemptions have been granted and cases released from hold under this procedure. *See, e.g., Islam v. Heinauer*, 32 F.Supp.3d 1063, 1071 (N.D. Cal. 2014) ("[B]etween mid-2006 and June 2013, USIC granted a total of 15,808 exemptions in cases involving terrorist-related inadmissibility grounds. Moreover, [from] June 2010 [through March 2014] USCIS released over 3,500 cases from hold.") (internal quotation marks and citations omitted); *Singh v. Napolitano*, 909 F.Supp.2d 1164, 1175 (E.D. Cal. 2012) ("new organizations have received exemptions, and thousands of aliens have benefitted from those exemptions"). As his application has not been denied, it appears that Plaintiff can benefit from an exemption.

Plaintiff has been awaiting adjudication since 2012. Dissatisfied with the lack of progress, he filed the pending Complaint for Relief in the Nature of Mandamus against the Secretary, Director of the CIS, Center Director of Nebraska Service Center of the CIS, Acting District Director of the San Diego District of the CIS, and the Attorney General of the United States (collectively "Defendants"). Plaintiff requests an order directing Defendants to adjudicate his application for permanent residence without further delay. Defendants filed a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim, or alternatively Rule 56 for summary judgment.

## II. DISCUSSION

Rule 12(b)(1) provides for dismissal if subject matter jurisdiction is lacking. Unlike State courts,

---

notice. Fed. R. Evid. 201; *see also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

3

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Federal courts must satisfy themselves of jurisdiction over the subject matter before proceeding to the merits. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The court must dismiss an action if subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3); *see also Hansen v. Dep't of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007).

Defendants argue that jurisdiction is barred by 8 U.S.C. § 1252(a)(2)(B), which states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D),[3] and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter[4] to be in the discretion of the

---

[3] Subparagraph D carves out jurisdiction in the courts of appeal for judicial review of certain constitutional and legal claims. 8 U.S.C. § 1252(a)(2)(D).

[4] The reference to "this subchapter" is to the United States Code, Title 8, Chapter 12, Subchapter II, codified at 8 U.S.C. §§ 1151-1381 and titled "Immigration."

Attorney General or the Secretary of Homeland Security, other
than the granting of relief under section 1158(a) of this title.

Because the CIS has not yet adjudicated Plaintiff's application, clause (i) does not apply. To prevail under clause (ii), the decision to hold Plaintiff's application in abeyance must (1) constitute "any other decision or action of the Attorney General or the Secretary;" (2) that was made under authority provided under Subchapter II; and (3) is specified to be discretionary.

It is undisputed that the first two requirements are met. The CIS is an organization within the DHS and is overseen by the Secretary. *See* https://www.dhs.gov, last visited Sep. 5, 2017. Placing Plaintiff's application on hold was a decision or action other than "judgment regarding the granting of relief." *See* 8 U.S.C. § 1252(a)(2)(B). The authority to adjudicate Plaintiff's application is found in Subchapter II at 8 U.S.C. §§ 1159(b) (adjustment of status for asylees) and 1255(a) (adjustment of status for nonimmigrants). Authority to grant the application under the discretionary exemption is found in Subchapter II at 8 U.S.C. § 1182(d)(3)(B)(i).

Plaintiff concedes that adjudication of his application is within the Secretary's "full discretion." (Opp'n at 2; *see also id.* at 8.) He argues that judicial review is available to order Defendants to issue a decision which has taken too long. He alleges that Defendants have unreasonably delayed adjudication of his application, and also suggests that they have refused to adjudicate it. (*See* Compl. at 5; Opp'n at 2, 8-9.) While it is apparent from the allegations that the adjudication has taken a long time -- five and a half years, Plaintiff's suggestion that Defendants are refusing to adjudicate is unsupported. The delay of five and a half years is insufficient to show refusal to adjudicate. A six-year delay in processing I-485 applications is not unreasonable *per se*. *See, e.g., Asmai v. Johnson*, 182 F. Supp. 3d 1086, 1095 (E.D. Cal. 2016); *Islam,* 32 F.Supp.3d at 1071-72; *Singh*, 909 F.Supp.2d at 1175. If delay is not unreasonable, it, *a fortiori,* cannot show refusal to act. Moreover, Plaintiff's own allegations regarding the steps that Defendants have taken so far (*see* Compl. at 3-4) show that this is not a case where Defendants have

5

refused to act on his application. The dispute focuses on the issue whether the pace of processing his application is discretionary, *i.e.,* whether § 1252(a)(2)(B)(ii) bars judicial review of the pace of adjudication.

The parties cite no binding authority on point. Defendants' reliance on the holding of *Hassan v. Chertoff*, 593 F.3d 785 (9th Cir. 2010), that the court lacked jurisdiction to review denial of Hassan's application for adjustment of status, is unavailing. Section 1252(a)(2)(B)(i) barred review because, unlike here, the application in *Hassan* was denied. *Id.* at 788-89. No circuit court of appeals has squarely ruled on the issue of jurisdiction over the pace of adjudication. *Bian v. Clinton*, 605 F.3d 249, 252 (5th Cir. 2010); vacated as moot at 2010 WL 363370 (I-485 application granted). District courts across the United States are divided. *See id.* at 252 & n.3 (surveying cases and noting that "District courts that have considered this issue have divided sharply"); *see also, e.g., Khan v. Johnson*, 65 F.Supp.3d 918, 925 (C.D. Cal. 2014) (collecting and discussing cases); *Beshir v. Holder*, 10 F.Supp.3d 165, 172, 173-74 (D.D.C. 2014) (same); *Singh*, 909 F.Supp.2d at 1169-70 (same).

In *Kucana v. Holder*, the Supreme Court interpreted § 1252(a)(2)(B)(ii) in the context of the Immigration Appeals Board's denial of a successive motion to reopen removal proceedings, and the Seventh Circuit's decision that it lacked jurisdiction to review it. 558 U.S. 233, 239-42 (2010). The Court explained that "[s]eparation-of-powers concerns ... caution us against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain," and held that "Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana,* 558 U.S. at 237 & 247. The opinion focuses on the phrase "authority for which is specified under this subchapter to be in the discretion ... ." 8 U.S.C. § 1252(a)(2)(B)(ii). The issue here, whether Congress intended to bar judicial review over the pace of adjudication of I-485 applications, turns on the meaning of the same phrase. Although the precise issue present in *Kucana, w*hether § 1252(a)(2)(B)(ii) provision applies when a decision is declared

discretionary not by statute but by regulation, i*d*. at 238, is not present here, the Court is guided by the separation-of-powers concerns noted in *Kucana*.

A well-established presumption favors judicial review of administrative action:

> When a statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review. We have consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction. Because the presumption favoring interpretation of statutes to allow judicial review of administrative action is well-settled, the Court assumes that Congress legislates with knowledge of the presumption. It therefore takes clear and convincing evidence to dislodge the presumption.

*Kucana*, 558 U.S. at 251-52 (internal quotation marks, brackets and citations omitted). Thus, "[a] statute affecting federal jurisdiction must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes." *Id.* at 252.

Section 1252(a)(2)(B)(ii) bars judicial review of "any other decision or action of the [Secretary] the authority for which is specified under this subchapter to be in [his] discretion." The fact that it does not explicitly reference the pace of adjudication does not preclude a finding that the pace is discretionary. This issue was addressed in a section of *Hassan* not cited by the parties. After the denial of his adjustment of status application, Hassan's advance parole was revoked. *Hassan*, 593 F.3d at 789. He argued that the revocation was not discretionary because "no statute or regulation authorizes revocation." *Id.* The court concluded the revocation was discretionary because it "inevitably followed from DHS's discretionary decision to deny adjustment of status." *Id.* at 790. That decision, in turn, was made pursuant to 8 U.S.C. § 1182(d)(5)(A), which grants discretion to revoke advance parole when it no longer serves its purpose. *Id.* at 789-90. Although no statute explicitly granted the authority and discretion to revoke

7

advance parole upon denial of adjustment of status, the authority and discretion were inherent in the broader grant provided in § 1182(d)(5)(A).

Similarly, the discretion over the pace of application processing is apparent, when § 1252(a)(2)(B)(ii) is read in the context of the statutes authorizing application processing. On its face, the bar under clause (ii) reaches intermediate administrative decisions or actions, which is in addition to the bar under clause (i). Clause (i) applies to administrative judgments issued under a discrete list of statutes: "no court shall have jurisdiction to review [¶] any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i). By contrast, clause (ii) is a "catchall," *Kucana*, 558 U.S. at 246-47, which provides:

> ... no court shall have jurisdiction to review--
>
> [¶] (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security ... .

8 U.S.C. § 1252(a)(2)(B)(ii).[5] It applies to intermediary administrative actions and decisions leading to judgment, so long as they are discretionary.

Furthermore, the statutes referred to in clause (ii), which provide authority to adjudicate I-485 applications, specify a wide scope of discretion. Sections 1255(a) and 1159(b) not only place adjustment of status in the Secretary's discretion, but go a step further by granting him discretion to prescribe regulations. Section 1255(a) provides:

---

[5] It has been noted that this provision "is refreshingly free from ambiguity and its terms are pellucidly clear." *Bian*, 605 F.3d at 253 n.6 (internal quotation marks and citation omitted).

8

> The status of an alien ... *may* be adjusted by the Attorney General,[6] *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence ... .

(Emphasis added.) Similarly, § 1159(b) states:

> The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's *discretion and under such regulations as the Secretary or the Attorney General may prescribe, may* adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum ... .

(Emphasis added.) In this regard, the statutes confer discretion not only to adjudicate, but to create the process of intermediary steps by which adjustment of status is adjudicated.[7] *See Beshir*, 10 F.Supp.3d at 173, 174 (discussing 8 U.S.C. §§ 1255(a) & 1159(b) and citing cases). The number and kind of intermediate decisions and actions directly impact the amount of time needed to adjudicate. Discretion over the process leading to adjudication therefore necessarily includes discretion over its pace.

This conclusion is reinforced in discretionary exemption cases where terrorism-related inadmissibility grounds preclude granting the application in the normal course. The statute grants the Secretary broad discretion by couching it in broad terms as "sole and unreviewable discretion:"

> [T]he Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine

---

[6] Although the statute refers only to the Attorney General, the authority to adjudicate adjustment of status has been delegated to the Secretary and the CIS. *See* 6 U.S.C. §§ 271(b)(5) & 557.

[7] This point distinguishes the pending case from *Kucana*. In *Kucana*, discretion was conferred on the Executive through regulations passed by the Executive branch itself. 558 U.S. at 252; *see also Beshir*, 10 F.Supp.3d at 175-76 (discussing *Kucana*). Here, by contrast, discretion is conferred on the Executive through statute passed by Congress.

> *in [his] sole unreviewable discretion* that subsection (a)(3)(B) shall not apply ... .

8 U.S.C. § 1182(d)(3)(B)(i) (emphasis added).

Finally, to exercise the discretionary exemption, the Secretary of State, Attorney General and the Secretary of Homeland Security must consult with each other. With this required step Congress ensured that the exemption process would be deliberate. "Whether an exemption applies or will be granted for individuals who aided or assisted Tier III terrorist organizations is a complex and sensitive decision." *Singh*, 909 F. Supp.2d at 1175. It involves "consideration of national security, foreign policy, and humanitarian issues. The determination by its very nature is time consuming[8] and not to be made lightly." *Id.* (internal quotation marks and citation omitted); *see also Islam,* 32 F.Supp.3d at 1072. The broad scope of discretion granted by § 1182(d)(3)(B)(i) is therefore consistent with the doctrine that political and national security considerations with implications for foreign relations are not subject to judicial review. *See Beshir*, 10 F.Supp.3d at 173, 177-78 (citing *INS v. Aguirre-Aguirre*, 526 U.S.415, 425 (1999)).

In sum, based on its plain language, § 1252(a)(2)(B)(ii) bars judicial review of discretionary intermediate decisions or actions in the process of adjudicating I-485 applications. That the bar extends to the pace of processing is inherent in the discretion to establish the kind and number of intermediate steps. In this regard, § 1252(a)(2)(B)(ii) dovetails with the plain language of the statutes conferring discretionary authority to process I-485 applications -- §§ 1255(a) and 1159(b) expressly grant discretion to pass regulations, and § 1182(d)(3)(B)(i) explicitly prescribes a time consuming process, which is in the Secretary's "sole and unreviewable discretion." Accordingly, Congress unambiguously precluded judicial review of the pace of adjudicating I-485 applications.

---

[8] Given the number of exemptions granted, this time-consuming process is not a mere excuse for delay. *See Islam,* 32 F.Supp.3d at 1071; *Singh,* 909 F.Supp.2d at 1175.

Several district courts in the Ninth Circuit have reached the opposite conclusion. Plaintiff cites *Khan v. Johnson* and *Islam v. Heinauer.* They held that the delay, seven plus and nearly six years, respectively, was unreasonable under the APA, and therefore subject to review. *Khan,* 65 F.Supp.3d at 921; *Islam,* 32 F.Supp.3d at 1066. Both are based on the premise that "the government has a non-discretionary duty to adjudicate [the] petition within a reasonable period of time" because "to hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." *Khan,* 65 F.Supp.3d at 925; *Islam,* 32 F.Supp.3d at 1069. Both cases ultimately rest on *Beyene v. Napolitano*, 2012 WL 2911838 (N.D. Cal.). *Khan,* 65 F.Supp.3d at 925 (citing *Islam*, 32 F.Supp.3d at 1069); *Islam,* 32 F.Supp.3d at 1069 (citing *Beyene*, 2012 WL 2911838.)

*Beyene* is based on four grounds. First, it notes that none of the relevant statutes expressly states that the pace of adjudication is discretionary. *Beyene*, 2012 WL 2911838 *3. This is not determinative of the issue. *See Hassan*, 593 F.3d at 789-90. Furthermore, *Beyene* addresses neither the plainly stated scope of § 1252(a)(2)(B)(ii), nor the breadth of discretion granted by §§ 1255(a), 1159(b) and 1182(d)(3)(B)(i).

Second, *Beyene* rests on the APA, 5 U.S.C. § 555(b), which mandates government administrative action "within a reasonable time." *Id*. However, the APA does not apply when another statute bars judicial review, 5 U.S.C. § 701(a)(1), as is the case here, 8 U.S.C. § 1252(a)(2)(B)(ii) ("[n]otwithstanding any other provision of law (statutory or nonstatutory)").

Third, *Beyene* rests on 8 U.S.C. § 1571(b) to suggest that the Congress expected action on I-485 applications to be completed within a certain amount of time. *Beyene,* 2012 WL 2911838 *3. Section 1571(b) states:

> (b) Policy
>
> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application ... .

11

Similar statutory "sense of Congress" language has been interpreted as "non-binding legislative dicta." *Yang v. Cal. Dept. of Soc. Serv.,* 183 F.3d 953, 961 (9th Cir. 1999); *see also Singh,* 909 F.Supp.3d at 1176 (addressing § 1571(b) and finding it does not set a time frame for I-485 applications); *Bian,* 605 F.3d at 255 (same). This is consistent with the "Policy" heading in the statute. Reading § 1571(b) as anything more would be inconsistent with its plain language, as well as with §§ 1252(a)(2)(B)(ii), 1255(a) and 1159(b), which grant discretion over intermediary steps in adjudicating I-485 applications, and with § 1182(d)(3)(B)(i), requiring the Secretary of DHS, the Secretary of State and the Attorney General to consult before granting a discretionary exemption.

Fourth, *Beyene* reasons that precluding judicial review over the pace of adjudication would fail to recognize the difference between "discretion over *how* to resolve an application and ... discretion over *whether*" to resolve it, thus allowing "perpetual delay of governmental obligations." 2012 WL 2911838 *3 (internal quotation marks and citations omitted, emphases in original). This reasoning suggests that review should be limited to refusal to adjudicate rather than to encompass slow-paced processing.[9] The pending case does not present the extreme delay necessary to show that Defendants are refusing to act on Plaintiff's application. For the foregoing reasons, the Court rejects Plaintiff's reliance on *Khan* and *Islam* to argue that the pace of processing I-485 applications is not covered by § 1252(a)(2)(B)(ii) jurisdictional bar.

Alternatively, Plaintiff relies on the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), and Mandamus Act, 28 U.S.C. §§ 1361 and 1651, to sidestep the jurisdictional bar. This is unavailing. Section 1252(a)(2)(B)(ii) explicitly excludes both statutes from consideration by stating that it applies "[n]otwithstanding any other provision of law (statutory or nonstatutory), including ... sections 1361 and 1651 of [Title

---

[9] Refusal to process applications arguably falls outside the scope of § 1252(a)(2)(B)(ii). *See* 8 U.S.C. §§ 1255(a) & 1159(b). The Court does not address this issue here, as Plaintiff does not allege facts supporting refusal to act on his application.

28]."[10]  The APA explicitly does not apply "to the extent that statutes preclude judicial review."  5 U.S.C. § 701(a)(1).  Furthermore, neither the Mandamus Act nor the APA apply to discretionary actions.  *Pittston Coal Group v. Sebben,* 488 U.S. 105, 121 (1988) ("The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty") (internal quotation marks and citation omitted); 5 U.S.C. § 701(a)(2) (the APA does not apply when "agency action is conferred to agency discretion by law").

For the foregoing reasons, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of the pace at which Defendants are processing Plaintiff's application.  Defendants' motion is **GRANTED** to the extent it is based on Rule 12(b)(1), and denied as moot in all other respects.  This action is **DISMISSED WITHOUT PREJUDICE** to filing another action in case of extreme delay sufficient to show refusal to process Plaintiff's application.

**IT IS SO ORDERED.**

Dated:  September 6, 2017

_____
Hon. M. James Lorenz
United States District Judge

---

[10]  United States Code Title 28, Sections 1351 and 1651 refer to the Mandamus Act.  Section 1651(a) establishes the authority of federal courts to issue writs:  "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of respective jurisdictions and agreeable to the usages and principles of law."  Section 1361 confers "original jurisdiction ... of any action in the nature of mandamus to compel ... any agency [of the United States] to perform a duty owed to the plaintiff."